# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re                                                                 Case No. 15-81028-WRS
                                                                             Chapter 13

SHERRICKA L. JONES,

       Debtor

## MEMORANDUM DECISION

This case is before the Court on the objection to confirmation filed by TitleMax of Alabama, Inc. (Doc. 16). TitleMax objects to the proposal of Debtor Sherricka L. Jones to modify a pawn transaction involving the certificate of title for a vehicle. The issue has been fully briefed. (Docs. 16, 44, 45). For the reasons set forth below, the objection to confirmation is SUSTAINED.

## I. FACTS & PROCEDURAL HISTORY

Sherricka L. Jones ("Jones") entered a pawn transaction with TitleMax of Alabama, Inc. ("TitleMax") on June 10, 2015. (Doc. 16). Jones borrowed $4,000 from TitleMax in exchange for the certificate of title to a 2007 Dodge Charger. Pursuant to the pawn contract, she had until July 10, 2015 to redeem the certificate of title by paying TitleMax $4,399.60 or to renew the pawn contract by simply paying the pawn charge of $399.60. Jones retained possession of the vehicle and used the money from the pawn transaction to pay off a prior lien held by Tefco Payment Center. TitleMax was timely listed as a lienholder on the vehicle's certificate of title. Jones did not redeem the certificate of title or renew the pawn contract before it matured on July 10, 2015.

Jones filed Chapter 13 bankruptcy on July 31, 2015. (Doc. 1). In her Chapter 13 plan, Jones proposes to pay TitleMax $4,500 at 4.25% interest via monthly plan payments of $89.00. (Docs. 15, 28). TitleMax objects, arguing that Jones did not propose the plan in good faith, and that the bankruptcy estate does not have a sufficient property interest in the vehicle to modify the pawn transaction and exercise a cramdown.[1] Jones retains possession of the vehicle, and TitleMax has filed a secured proof of claim in her case for $4,732.60.[2] (Claim 1).

## II. LAW

The Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b), and the District Court's General Order of Reference dated April 25, 1985. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L). This is a final order.

### A. Property of the Estate

The issue is whether the bankruptcy estate has a sufficient property interest in the vehicle for Jones to modify the rights of TitleMax under the pawn transaction.

Property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "[W]hether a debtor's interest constitutes 'property of the estate' is a federal question[;] . . . however, 'the nature and existence of the debtor's right to property is determined by looking at state law.'" Charles R. Hall Motors, Inc. v. Lewis (In re Lewis), 137 F.3d 1280, 1283 (11th Cir. 1998) (quoting Southtrust

---

[1] This opinion does not address TitleMax's lack of good faith argument.

[2] According to the attached itemization, this amount consists of the $4,000 principal, the $399.60 pawn charge (labeled as interest), and $333 vaguely labeled as "charges."

Bank of Ala. v. Thomas (In re Thomas), 883 F.2d 991, 995 (11th Cir. 1989)) (internal brackets omitted). Therefore, determination of this issue requires consideration of the interplay between the Bankruptcy Code, the Alabama Pawnshop Act, the Alabama Uniform Commercial Code ("UCC"), and the Alabama Uniform Certificate of Title and Antitheft Act ("AUCTAA").

### B. Alabama Pawnshop Act

#### 1. Scope of Pawn Transactions

The Alabama Pawnshop Act defines a "pawn transaction" as "[a]ny loan on the security of pledged goods or any purchase of pledged goods on condition that the pledged goods are left with the pawnbroker and may be redeemed or repurchased by the seller for a fixed price within a fixed period of time." ALA. CODE § 5-19A-2(3). "Pledged goods" are defined as "[t]angible personal property other than choses of action, securities, or printed evidences of indebtedness, which property is purchased by, deposited with, or otherwise actually delivered into the possession of, a pawnbroker in connection with a pawn transaction." ALA. CODE § 5-19A-2(6).

The Alabama Supreme Court has defined "tangible personal property" in § 5-19A-2(6) as "personal property, palpable, susceptible to the sense of touch, capable of ownership, and endowed with intrinsic value." Floyd v. Title Exchange & Pawn of Anniston, Inc., 620 So. 2d 576, 578 (Ala. 1993) (internal quotation marks omitted). To that end, a certificate of title to an automobile qualifies as "pledged goods" such that its offer as security is sufficient to create a transaction subject to the Alabama Pawnshop Act, even when the pledgor retains possession of the vehicle. Id.; *see also* Blackmon v. Downey, 624 So. 2d 1374, 1376 (Ala. 1993) ("money-

3

lending transactions involving the transfer of automobile certificates of title for the purpose of giving security are 'pawn' transactions").

### 2. Rights and Obligations of Pawnbrokers

A pawn transaction provides the pawnbroker "a lien on the pledged goods pawned for the money advanced and the pawnshop charge owed . . . subject to the rights of other persons who have an ownership interest or prior liens in the pledged goods." ALA. CODE § 5-19A-10(a). Pawnbrokers are permitted to charge up to 25% per month of the principal amount advanced in the pawn transaction. ALA. CODE § 5-19A-7(a).

"A pledgor shall have no obligation to redeem pledged goods or make any payments on a pawn transaction. Pledged goods not redeemed within 30 days following the original fixed maturity date shall be forfeited to the pawnbroker and absolute right, title, and interest in and to the goods shall vest in the pawnbroker." ALA. CODE § 5-19A-6. The 30-day redemption period starts at the date the pawn contract matures, not at the date the vehicle is repossessed. Pattans Ventures, Inc. v. Williams, 959 So. 2d 115, 122 (Ala. Civ. App. 2006). A pawnbroker becomes legal owner of a pawned vehicle once the statutory redemption period expires; until then, the pawnbroker is merely a lienholder. State ex rel. Morgan v. Thompson, 791 So. 2d 977, 978 (Ala. Civ. App. 2001).

4

### C. Alabama Uniform Commercial Code

### 1. Attachment

Article 9A of the UCC governs secured transactions. The UCC defines "security agreement" as "an agreement that creates or provides for a security interest." ALA. CODE § 7-9A-102(73). "Security interest" is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation." ALA. CODE 7-1-201(35). "A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral[.]" ALA. CODE § 7-9A-203(a). A security interest becomes enforceable against the debtor with respect to the collateral when value has been given, the debtor has rights in the collateral, and the debtor has authenticated a security agreement that provides a description of the collateral. ALA. CODE § 7-9A-203(b)(1)-(3)(A).

### 2. Interplay Between UCC and Alabama Pawnshop Act

The term "'[s]ecurity interest' does not include the special property interest of a buyer of goods on identification of those goods to a contract for sale under [ALA. CODE §] 7-2-401, *but a buyer may also acquire a 'security interest' by complying with Article 9A*." ALA. CODE § 7-1-201(35) (emphasis added). "Title to goods cannot pass under a contract for sale prior to their identification to the contract, and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this title." ALA. CODE § 7-2-401(1) (parenthetical omitted). "The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the contract refers. . . . In the absence of explicit agreement 'identification' occurs . . . [w]hen the contract is made if it is for the sale of

5

goods already existing and identified[.]" ALA. CODE § 7-2-501(1)(a). "*Unless otherwise explicitly agreed* where delivery is to be made without moving the goods . . . [i]f the seller is to deliver a tangible document of title, title passes at the time when and the place where he delivers such document. . . ." ALA. CODE § 7-2-401(3)(a) (emphasis added).

It is clear from the forgoing provisions that the Alabama Pawnshop Act and the UCC are not mutually exclusive. Instead, a pawn transaction may also qualify as a security agreement, and a pawnbroker may obtain both a pawnshop lien and a UCC security interest on the same pledged goods, or collateral, from the same transaction. Mattheiss v. Title Loan Express (In re Mattheiss), 214 B.R. 20, 29-30 (Bankr. N.D. Ala. 1997); Harkness v. EZ Pawn Ala., Inc., 724 So. 2d 32, 33 (Ala. Civ. App. 1998). A pawnshop lien is a special property interest outlined by ALA. CODE § 7-2-401 and a pawnbroker obtains that interest under the UCC by identification of the pledged goods.[3] However, the pawnbroker does not gain title upon his receipt of the certificate of title, as provided in the UCC, because the Alabama Pawnshop Act expressly provides that a pawnbroker cannot gain legal title to pledged goods until the redemption period has run. *See* ALA. CODE § 5-19A-6.

---

[3] The burden of carrying insurance is instructive here. Normally, a secured lender may require the borrower to maintain insurance on the collateral for the protection of the lender. That is not the case in pawn transactions, because a pawnbroker may not "[s]ell or otherwise charge for insurance in connection with a pawn transaction." ALA. CODE § 5-19A-8(10). In other words, a pawnbroker must carry his own insurance on the pledged goods or bear the risk of its loss, and the UCC expressly acknowledges this. *See* ALA. CODE § 7-2-501(1)(a).

6

### D. Alabama Uniform Certificate of Title and Antitheft Act

Attachment secures a creditor's rights against collateral with respect to the debtor, but not with respect to third parties (such as a bankruptcy trustee) unless the interest is also "perfected." "A security interest is 'perfected' when it is valid against third parties generally, subject only to specific statutory exceptions." ALA. CODE § 32-8-2(19). "A perfected security interest . . . has priority over a conflicting unperfected security interest. . . ." ALA. CODE § 7-9A-322(a)(2).

#### 1. Perfection of a UCC Security Interest on a Motor Vehicle

For purposes of perfecting a UCC security interest, the UCC provides that "the local law of the jurisdiction under whose certificate of title the goods are covered governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in goods covered by a certificate of title. . . ." ALA. CODE § 7-9A-303(c). Under AUCTAA, and with certain exceptions inapplicable here, all vehicles with a model year of 1975 or later must have a certificate of title. ALA. CODE § 32-8-30(a). Therefore, the perfection of a UCC security interest in motor vehicles made 1975 or later is governed by AUCTAA. Mattheiss, 214 B.R. at 30.

AUCTAA provides that "a security interest in a vehicle for which a certificate of title is required . . . is not valid against creditors of the owner or subsequent transferees . . . unless perfected . . . by the delivery to the department [of revenue] of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the date of his security agreement and the required fee." ALA. CODE § 32-8-61. If delivery of the required documents and fee is proffered within 30 days of the creation of the security

7

agreement, perfection of the security interest relates back to its creation; otherwise, it becomes perfected on the date of delivery. ALA. CODE § 32-8-61(b). This method "of perfecting and giving notice of security interest in motor vehicles required to be titled . . . shall be exclusive." ALA. CODE § 32-8-66; *see also* Hill v. McGee, 562 So. 2d 238, 240 (Ala. 1990) (explaining policy reasons for exclusivity of security interest perfection under AUCTAA).

### 2. Perfection of a Pawnshop Lien on a Motor Vehicle

Pawnshop liens on motor vehicles are also subject to AUCTAA's requirements for perfection and to its exclusivity provision because pawnshop liens fall within AUCTAA's definition of a security interest. Mattheiss, 214 B.R. at 30. AUCTAA defines a "security interest" as "[a]n interest in a vehicle or manufactured home reserved or created by agreement and which secures payment or performance of an obligation." ALA. CODE § 32-8-2(19). Thus, a pawnbroker's mere possession of a vehicle's certificate of title and a car key, while sufficient to create and attach a pawnshop lien under the Alabama Pawnshop Act, is insufficient to perfect the lien against third parties because bare possession of a certificate of title and a key does not comply with AUCTAA. In re Davis, 269 B.R. 914, 916 (Bankr. M.D. Ala. 2001).

AUCTAA also governs the transfer of ownership of motor vehicles. *See* ALA. CODE § 32-8-44. Unlike the perfection of security interests, however, AUCTAA does not provide the exclusive method of transferring ownership. Congress Fin. Corp. v. Funderburk, 416 So. 2d 1059, 1061-62 (Ala. Civ. App. 1982). Therefore, the legal title a pawnbroker obtains to a vehicle from the expiration of a redemption period on a pawn contract, as provided by the Alabama Pawnshop Act, is valid even though the transfer does not comply with AUCTAA, but is still

8

subject to the interests of third parties if the lien or ownership interest is unperfected. *Cf.* Harkness, 724 So. 2d at 33 (holding that a pawnbroker may repossess a pledged vehicle on which the redemption period has run even if its pawnshop lien is not perfected under AUCTAA).

### E. Modification of State Law Contractual Rights in Bankruptcy

A Chapter 13 debtor may "modify the rights of holders of secured claims" in her Chapter 13 plan, and may retain possession of the collateral over the creditor's objection by providing for payment through the plan of the replacement value of the collateral (also known as a "cramdown").[4] 11 U.S.C. §§ 1322(b)(2) and 1325(a)(5)(B); Assocs. Comm. Corp. v. Rash, 520 U.S. 953, 962 (1997). However, the extent to which a Chapter 13 debtor may modify the rights of a secured creditor or cram down its collateral depends on the nature of the debtor's rights that become property of the estate. Thomas, 883 F.2d at 995.

#### 1. Treatment of Debtor's Non-Possessory Property Rights

When personal property that the debtor still has legal title in is seized pre-petition pursuant to a lien, the debtor's legal title to the personal property renders it part of the debtor's bankruptcy estate. United States v. Whiting Pools, Inc., 462 U.S. 198, 209 (1983). Such property is subject to turnover and presumably may be dealt with in a Chapter 13 plan. Id. However, if the debtor's legal title is also transferred pre-petition, the seized personal property is excluded from the estate. Id.

---

[4] Because a pawnshop lien on a vehicle's certificate of title is not a purchase-money security interest (*see* ALA. CODE § 7-9A-103), it is not protected from being stripped down to the collateral's replacement value by the hanging paragraph of 11 U.S.C. § 1325(a).

In Alabama, a debtor retains legal title to personal property securing a creditor's interest up to the point of default, but upon default the debtor's legal title passes to the secured creditor. Lewis, 137 F.3d at 1283-84. Thus, if a debtor defaults pre-petition on an obligation secured by personal property and the creditor repossesses the collateral pre-petition, the collateral itself is not property of the bankruptcy estate when the debtor files the petition because the debtor no longer has a property interest in the collateral. Id. at 1284. Consequently, a Chapter 13 debtor may not modify the rights of a secured creditor who has repossessed the collateral pre-petition under § 1322(b)(2).

### 2. Treatment of Debtor's Statutory Redemption Rights

Even if personal property collateral itself is not property of the estate, if the collateral is still subject to a state statutory right of redemption at the time the petition is filed, the debtor's right to redeem the collateral is property of the estate. Id. The Bankruptcy Code extends the length of the debtor's right of redemption to 60 days after the filing of the bankruptcy petition if the right of redemption would otherwise expire sooner. In re Bramlett, 483 B.R. 244, 246 (Bankr. N.D. Ala. 2012); 11 U.S.C. § 108(b)(2). However, a right of redemption cannot otherwise be modified by a Chapter 13 plan pursuant to § 1322(b)(2). Bramlett, 483 B.R. at 246 (citing Lewis, 137 F.3d at 1285). Instead, it must be exercised, if at all, pursuant to state redemption requirements: full payment of the amount owed within the redemption period. Commercial Fed. Mortg. Corp. v. Smith (In re Smith), 85 F.3d 1555, 1558 (11th Cir. 1996).

10

### 3. Treatment of Debtor's Possessory but Non-Titled Rights

When the debtor maintains possession of personal property at the time she files bankruptcy, the right to possession of that property becomes property of that estate even if the debtor lacks legal title to the property.  Thomas, 883 F.2d at 996.  As such the debtor's right of possession to the collateral brings that collateral under the protection of the automatic stay.  11 U.S.C. § 362(a)(3).  The "right to possession is not absolute," but rather is contingent on the debtor "fulfilling [her] financial obligation . . . under the sale contract."  Thomas, 883 F.2d at 996; *see also* 11 U.S.C. § 362(d)(1).

However, the debtor cannot modify the rights of the secured creditor under § 1322(b)(2) if the debtor has lost legal title to the collateral and the secured creditor objects to such treatment.  Geddes v. Mayhall Enters., LLC (In re Jones), 304 B.R. 462, 466-68 (Bankr. N.D. Ala. 2003); *see also* Smith, 85 F.3d at 1557-58 (holding that a Chapter 13 debtor may cure a default on a mortgage of real property up to the point that a valid foreclosure sale occurs).  This is particularly true in the case of a pawn transaction because a pawnbroker, unlike other secured creditors, cannot seek a deficiency claim in the event the collateral (once repossessed) is sold for less than the amount loaned.  *See* ALA. CODE § 5-19A-6.  Instead, the debtor may simply enjoy possession of the collateral until the secured creditor or pawnbroker obtains relief from the stay. *See* 11 U.S.C. § 362(d)(1).

## III. ANALYSIS

The contract between Jones and TitleMax involves a $4,000 loan secured by the certificate of title to a vehicle (rather than the vehicle itself); however, the Alabama Supreme Court has held that such contracts fall within the scope of the Alabama Pawnshop Act. *See* Floyd, 620 So. 2d at 578. Also, the contract provides for forfeiture of the vehicle in the event that Jones does not repay the loan, meaning that she would not be liable for any potential deficiency balance, and the pawn charge is less than 10% of the loan per month. Therefore, the contract is a pawn transaction subject to the Alabama Pawnshop Act. The contract also provides TitleMax a UCC security interest in the vehicle, and TitleMax perfected that interest by timely applying for a new certificate of title listing it as a lienholder. *Cf.* Davis, 269 B.R. at 916.

Jones had neither repaid the loan nor paid the pawn charge by the time the pawn contract matured on July 10, 2015. At that point, her 30-day statutory right of redemption began. *See* ALA. CODE § 5-19A-6; Pattans Ventures, Inc., 959 So. 2d at 122. Jones filed bankruptcy on July 31, 2015 before her statutory redemption period expired, meaning that her redemption period was extended until September 29, 2015. *See* 11 U.S.C. § 108(b)(2); Bramlett, 483 B.R. at 246. Jones's possession of the vehicle gives her bankruptcy estate a possessory right to it that is protected by the automatic stay. However, Jones's legal title to the vehicle consisted of a mere statutory right of redemption when she filed bankruptcy, and a statutory right of redemption cannot be modified in a Chapter 13 plan. *See* Smith, 85 F.3d at 1558; Bramlett, 483 B.R. at 246. Instead, Jones could only exercise her right of redemption, if at all, by paying the full redemption

12

Case 15-81028    Doc 47    Filed 01/12/16    Entered 01/12/16 15:55:52    Desc Main
Document      Page 12 of 13

amount of $4,399.60 by September 29, 2015. Because Jones did not, she cannot now redeem her collateral under applicable law, nor modify TitleMax's contract rights in her Chapter 13 plan.

## IV. CONCLUSION

At the time she filed bankruptcy, Sherricka L. Jones had possession of a vehicle she pawned and a statutory right to redeem its certificate of title. That is not a sufficient property right for her to be able to modify the rights of TitleMax in her Chapter 13 plan. Therefore, TitleMax's objection to confirmation must be sustained.

Done this 12th day of January, 2016.

United States Bankruptcy Judge

c: Paul D. Esco, Attorney for Debtor
Charles N. Miller, Attorney for Titlemax
Curtis C. Reding, Trustee